## JOHN K. & CATHERINE S. MULLEN BENEVOLENT CORP. *v.* UNITED STATES.

No. 32. Argued October 20, 1933.—Decided November 6, 1933.

*Mr. Branch Bird,* with whom *Mr. W. G. Bissell* was on the brief, for petitioner.

*Assistant Attorney General Wideman,* with whom *Solicitor General Biggs* and *Messrs. Wm. W. Scott* and *W. S. Ward* were on the brief, for the United States.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This action was brought in the District Court for Idaho, under the Tucker Act, to recover a balance due on improvement district bonds issued by the village of American Falls, Idaho, for sidewalk and sewer construction. The theory of the petitioner, holder of the securities, was that the liability of the United States arose out of its acquisition of land in the districts for the construction of the American Falls reservoir under the authority of the Reclamation Act of June 17, 1902 (c. 1093, 32 Stat. 388). The Circuit Court of Appeals reversed a judgment in petitioner's favor, and the case was brought here by certiorari.

In 1915 and 1916 the village (now city) of American Falls duly created local improvement districts Nos. 1 and 2 for the construction of sewers, and local improvement district No. 8 for the laying of sidewalks, authorized bond issues to finance the work, and levied against the several parcels of land in the districts assessments totaling an amount calculated to suffice for the payment of principal and interest of the bonds. All of the bonds of the three

districts were purchased from the village by J. K. Mullen, who in 1925 transferred to the petitioner certain of the bonds of each district. Beginning in 1920 the respondent acquired all the real property within the three districts for the construction of the reservoir. In some cases title passed by condemnation, but in most instances by deeds from the then owners. The acquisition was completed prior to January 1, 1927. As title to each lot was obtained the United States paid or caused to be paid all existing assessments against the lot. There was general knowledge prior to 1927 that the total of the assessments would be insufficient to pay all the bonds. The petitioner asserts, and we may assume, that statutory authority exists, in case of a deficiency arising from causes shown by the record, to re-assess the property within the districts for the amount of the deficiency. By ordinances enacted July 3, 1928, and proceedings pursuant to them, the city re-assessed all the land within the districts. But as the land was then owned by the United States, the assessment was a nullity. *Van Brocklin* v. *Tennessee*, 117 U.S. 151. At some time between 1920 and January 1, 1927, the agents of the Government responsible for the acquisition of the reservoir site learned that the original assessments were insufficient to pay the outstanding bonds. This knowledge led them to require vendors to leave part of the purchase price on deposit with the United States pending determination of the Government's liability for probable re-assessments. Subsequently to the institution of the present suit these officials, apparently upon advice that assessments made after the conveyances could not affect the title of the United States, caused the moneys so withheld to be paid to the vendors. The total so retained and ultimately paid over was in excess of the amount due upon the petitioner's bonds.

The petitioner argues that the bonds were property and were taken by the respondent and, in the alternative, that

they were liens, actual or inchoate, on the realty, and as the lien could not be foreclosed against lands owned by the United States, the respondent's acquisition of the lots destroyed the value of the securities and gave rise to an implied promise to pay the sums remaining due to the bondholders. The respondent replies that the bonds were not taken, were not liens upon the real estate acquired, but only upon the existing assessments, or to the amount of these assessments, all of which were cleared from the land at the time of the conveyances to the Government; the United States recognized no lien of the bonds upon the tracts in question and made no contract express or implied to pay the bonds or any future assessments; suit was not brought within the time limited by the Tucker Act; the cause of action, if any, was in Mullen, the owner of the bonds at the time title passed to the United States, and R.S. 3477 forbids assignment to the petitioner. An understanding of the status of the bonds and the rights of their owner as respects the real property in the improvement districts is necessary to a solution of some of the questions presented.

The Idaho statutes provide for the creation by municipal action of improvement districts for constructing public works of the character with which we are here concerned (Idaho Compiled Statutes, 1919, §§ 3999-4151, inclusive*). The first step is an ordinance declaring the intention to create the improvement, describing the section to be improved, estimating the cost, and declaring that the cost is to be assessed against the contiguous property (§ 4003). Protests may be made and are to be heard and considered, and thereafter an ordinance is passed creating the district and providing for the improvement and for taxation and assessment of the cost

---

*Reference will be made only to the sections dealing with sidewalks, &c., since those applicable to sewers are of similar import.

upon all parcels of land within the district, in proportion to benefits (§ 4005). "Whenever any expense or cost of work shall have been assessed on any land the amount of said expenses shall become a lien upon said lands," . . . (§ 4007). The municipality may provide for payment by instalments instead of levying the entire assessment at one time, and in that case may issue in the name of the municipality improvement bonds of the district payable in instalments within ten years (§ 4014). Provision is made for annual levies to meet instalments and interest (§ 4017), for the form of the bonds (§ 4018), and for the redemption of their lots by the respective owners. If so redeemed the property affected is not thereafter to be liable for further special assessments for the same improvement except as in § 4024 provided (§ 4019). Re-assessment on all the property in the district is permitted by § 4024, "Whenever, for any cause, mistake or inadvertence the amount assessed shall not be sufficient to pay the cost of the improvement made and enjoyed by owners of property in the local assessment district where the same is made," . . . It was under this section that the re-assessments were made in the instant case.

The municipality is not liable for the amount of the bonds (§ 4026). Its only duty is to collect the assessments and place them in a separate fund set apart for payment of principal and interest. In fulfilment of this obligation the city may bring suit to recover out of each lot the amount of any assessment against it (§ 4007), and if the municipality fails or neglects to collect, the bondholder may proceed to do so in his own name, and may foreclose the lien of the assessment (§ 4023). The section provides that the bonds " shall transfer to the . . . owner or holder, all the right and interest of such municipality *in and with respect to every such assessment,* and the lien

thereby created against the property of such owners assessed," and shall authorize the holder " to receive, sue for and collect, or have collected such assessment embraced in any such bond " . . . The bonds are to provide that the principal sum and interest is payable out of the local improvement fund created for the making of the improvement by assessment, and not otherwise (§ 4018), and " the holder of any such bond shall look only to the fund provided by such assessment for the principal or interest of such bond " (§ 4025). The lot owner is not personally liable for the assessment.

The bondholder is in equity the owner of the assessment fund and, as the real party in interest, may, in event of the city's default in collection, enforce the city's right to collect the assessment out of the land. The bonds have no general lien upon the lands in the district and save through the assessment no special lien on any tract. *New First Nat. Bank* v. *Weiser*, 30 Idaho 15, 22; 166 Pac. 213.

The petitioner insists that the bonds are property and were in legal effect taken by the respondent. The argument is that the sole source of payment was a re-assessment upon the lots in the improvement districts, and as the action of the respondent rendered such procedure vain, the United States as effectually destroyed the chose in action as if it had seized the instruments evidencing the right. But the bonds were not taken. At the date of acquisition by the Government the real estate was subject to be assessed in the future for sundry taxes, amongst them taxes in the nature of re-assessments for sewers and sidewalks. It is true these could not thereafter be levied on property which had passed to the United States, but this does not mean that the Government appropriated the right to assess them *in futuro*, nor that it took the benefit which might accrue to bondholders consequent on such future levies. By purchase of the lands the United States

at most frustrated action by the city to replenish the assessment fund to which alone the bondholder must look for payment of his bonds. But this was not a taking of the bondholder's property. *Omnia Commercial Co.* v. *United States,* 261 U.S. 502.

What has been said shows that the respondent did not take or destroy any lien belonging to the petitioner. None remained upon the land, when the purchases were consummated. The re-assessments were the result of proceedings begun thereafter. They were ineffective to create a lien upon lands owned by the Government. *United States* v. *Buffalo,* 54 F. (2d) 471.

The respondent did not expressly contract with the petitioner to make good any unpaid balance on the outstanding bonds. Can an implied contract of that nature be spelled out of the acts of the Government's agents? We think not. Care was taken to free the lands of all liens, including the assessments then unpaid. The vendors were under no legal liability at the date of transfer for any future re-assessments. *United States* v. *Buffalo, supra; Brown* v. *Silverton,* 97 Ore. 441; 190 Pac. 971; *Beezley* v. *Astoria,* 126 Ore. 177, 184; 269 Pac. 216. The withholding of a portion of the purchase-money pending an investigation of the possibility that the realty would be liable for a re-assessment, falls far short of indicating that the Government intended to pay the bondholders if it should develop that no lien existed at the date of acquisition. A purpose to pay only valid subsisting liens negatives an agreement to pay something which had no such character. Compare *Tempel* v. *United States,* 248 U.S. 121; *Alabama* v. *United States,* 282 U.S. 502.

These views render unnecessary discussion of the contentions with respect to the timeliness of the suit and the assignability of the cause of action.

The judgment is *Affirmed.*