**PEOPLE OF PUERTO RICO, on Behalf of ISABELA IRR. SERVICE, v. UNITED STATES.**

**No. 3811.**

Circuit Court of Appeals, First Circuit.

March 11, 1943.

William Cattron Rigby, of Washington, D. C. (Manuel Rodriguez Ramos, Acting Atty. Gen., for Puerto Rico, of counsel), for appellant.

John P. Hearne, Atty., Dept. of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., and Vernon L. Wilkinson, Atty., Dept. of Justice, of Washington, D. C., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This is an appeal from an order of the District Court of the United States for Puerto Rico dismissing the claim made by the People of Puerto Rico on behalf of the Isabela Irrigation Service for additional compensation in proceedings instituted by the United States to acquire land by condemnation for military purposes.

The United States, on September 6, 1939, filed its petition and declaration of taking in the district court and deposited in the registry of the court certain sums of money as the estimated compensation for the condemned land. Included in the land described in the petition were 592 acres located within the Isabela Irrigation Service.

The Legislature of Puerto Rico in 1919 authorized the issuance and sale of bonds to secure funds for the construction and development of an irrigation system provided for by Act No. 63, called the Isabela Public Irrigation Law. The good faith of the People of Puerto Rico was pledged for the payment of the bonds and it was recited in Act No. 59, Section 8 (1919), that the revenues derived from assessments levied upon the lands included in the irri-

gation district were to be devoted to the payment of the interest and principal of the bonds. The proceeds of the sale of the bonds and all sums accrued by reason of assessments of taxes and sale of water and power within the irrigation district were to be deposited in the treasury of Puerto Rico in a trust fund to be known as the "Isabela Irrigation Fund". It was further provided that all expenditures for the construction and maintenance of the irrigation system were to be made therefrom. Each tract of land was liable under the Act only for its proportionate share of the assessments and the right to use the water from the system was made inalienably appurtenant to the land. Section 29 of the Public Irrigation Law provided that the amount assessed under the provisions of the Act for the different tracts comprising the permanent irrigation district should be a charge upon the lands in favor of The People of Puerto Rico and should constitute a lien upon the lands. The annual assessment was not to exceed $15 per acre. It was not until 1928 that the operation of the system was begun and later in July, 1929, the treasurer was authorized to issue additional bonds in the amount of $1,250,000 to pay for installments of principal and interest on the original bonds and the cost of operation and maintenance until the assessments on the land brought in sufficient funds for this purpose. Subsequently, the Legislature passed Act No. 70, (1934), authorizing the Treasurer to defer unpaid assessments up to June 30, 1934, and such deferred assessments were converted into a current debt of the landowner and the formerly existing liens for the payment of said assessments were extinguished. By Act No. 78 (1936), the Legislature of Puerto Rico suspended Section 29 of the Public Irrigation Law, as amended, until June 30, 1941, insofar as it referred to assessments and in lieu of assessments, provided that the treasurer levy a special tax of $1.00 per acre on the land in the district from July 1, 1936, to June 30, 1941. This Act also authorized the Commissioner of Interior to sell water at specified rates to the landowners whose land was in the irrigation district, if they had paid the special tax, and to sell water to land owners outside the irrigation district at slightly higher rates, without a payment of the special tax. Section 34 of Act 63, supra, which made the right to use the water inalienably appurtenant to the land in the irrigation district, was sus-

pended. By Act No. 178, (1941) the Legislature of Puerto Rico continued the special tax of $1.00 per acre without allotment of any water, and continued the suspension of Sections 29, 33 and 34, of Act 63, supra, until June 30, 1951, and the provision for the sale of water to land-owners whose land was not in the irrigation district was continued.

The People of Puerto Rico in its answer in the condemnation proceedings below claimed that the value of the interest of the Isabela Irrigation Service in the lands that had been condemned amounted to $442,606.86. It claimed $64,393.07 as the value of certain tangible items, and $378,-213.79 as the value of certain financial items. A deficiency judgment was entered allowing the People of Puerto Rico its claim for tangible items. The financial items were set forth in the answer as follows:

"FINANCIAL ITEMS:
Group A.

| | |
|---|---|
| 1. Loss of income: New conveyances | $199,000.00 |

Group B.

| | | |
|---|---|---|
| 1. Advances for payment of interest on bonded debt | $114,374.19 | |
| 2. Arrears in payment of amortization | 64,839.60 | 179,213.79 |

| | |
|---|---|
| GRAND TOTAL FINANCIAL ITEMS Groups "A" and "B" | 378,213.79 |
| GRAND TOTAL OF ALL ITEMS | 442,606.86." |

On December 24, 1941, the United States filed a motion in which it prayed that the court direct the People of Puerto Rico to make more certain and definite its answer so that the court might properly distribute the award. On January 14, 1942, the court entered an order requiring the People of Puerto Rico to file a statement of particulars setting forth the theory upon which it based its claim for financial items. The People of Puerto Rico in compliance with the court order filed a statement of particulars, the pertinent part of which is as follows:

"(c) Claim for damages suffered as a direct and inevitable result of readjusting the irrigation district of Isabela by including new land in the same amount as that taken under these proceedings, and the construction and establishment of new equipment therein so that the service may continue in operation in conditions analogous to those prior to the taking. The amount of this claim to be computed on the basis of the present cost of the required

installation, including constructions of canals, laterals, gates, equipment, etc.; less the depreciation of such installation for a number of years equivalent to that in which the severed installation had been in use; less the amount of $64,393.07, allowed by the court as present recoverable value of the severed installation; namely: $114,716."

It is clear from the proceedings in the lower court that the only question there in dispute was the claim for additional compensation in Section 3(c) of its statement of particulars. The parties are, however, in disagreement as to the theory upon which this claim is based. It is the contention of the appellee that the People of Puerto Rico has abandoned its original claim of compensation for "financial items". As buttressing this contention, the appellee points to a stipulation entered into by the parties on February 28, 1942, in which the United States agreed to compensate the People of Puerto Rico for the tangible items taken and in which the parties further agreed that the district court was to retain jurisdiction of the cause for the sole reason of disposing of appellant's claim as found in paragraph 3(c) of the statement of particulars. Appellee asserts that the People of Puerto Rico in this appeal can only rely upon the single ground set forth in paragraph 3(c), that is, compensation for the cost of readjusting the irrigation system by including new land in the same amount as that taken under these proceedings and the cost of the construction and establishment of the new equipment. It is argued that the payment of $64,393.07 was in full satisfaction of any damage caused to the People of Puerto Rico as a result of the taking by the United States and that to compensate it for readjusting the irrigation system would be in effect double compensation.

Appellant in its brief contends that it has not shifted its position or abandoned any claim set forth by it in its answer. It explains Section 3(c) of its statement of particulars by saying that the only effect of the modification of its claim as set forth in its answer is in relation to the measure or method by which the amounts of its loss of income should be calculated, and that it has never given up its claim based upon its right to make future assessments upon the lands in the irrigation system. We confess that we are not entirely clear that appellant's present claim of $114,-716 is the same as its claim of $378,213.-79, the sum designated as "financial items". In view of the fact that the lower court assumed by its discussion of the issue that the People of Puerto Rico did not abandon its claim of compensation for the right to make future assessments, we shall hereafter give it consideration.

■ The lower court, in its opinion, effectively disposed of the contention that the People of Puerto Rico is entitled to compensation for the cost of readjusting the irrigation system. We quote from the opinion:

"By the stipulation of the parties it is agreed that claimant has already been paid the fair value of the distribution system located on the lands taken and full compensation for the taking of it. Not only did this compensation include the fair value of the said part of the distribution system but it also included the cost new of the construction of the 13,000 foot reinforced concrete pipe line along the eastern boundary of the lands taken to connect the severed canal. Claimant would not have been entitled to greater compensation than that; as to said part of its distribution system it has been made whole. The total amount paid was $64,393.07. Undoubtedly, this amount represents the cost of reconstruction new less accrued depreciation as of the date of the taking. * * *

"What claimant is asking is that it be paid the fair value of that part of its distribution system located on the land taken, and that it be paid also the cost of constructing another distribution system in a different land area. It is not entitled to both."

■ Appellant does not seriously contend that the cost of readjusting the irrigation system is compensable but does argue that it has a legal right and duty to levy and collect special taxes and assessments on the land within the irrigation district for the purpose of repaying the money borrowed on the irrigation bonds, and that this legal right is a franchise, citing in this respect Monongahela Navigation Company v. United States, 148 U.S. 312, 341, 13 S.Ct. 622, 37 L.Ed. 463. We find no merit in this contention. It is true that under the laws of Puerto Rico there existed the right to levy special assessments upon the lands for the payment of the bonds but it does not follow that the right to exact special assessments is a franchise. If this were so, it could equally be argued

that the right to tax is a franchise for which upon condemnation the United States must pay just compensation. We know of no valid distinction for the purpose of the present discussion between the right to tax in general and the right to levy special assessments. See 5 McQuillan, Municipal Corporations, 2d Ed., § 1574, p. 347 (1928). Any piece of property taken in condemnation by the United States is withdrawn from the scope of local taxation. But to say that the power to tax is a franchise or property right is to say that a state or municipality may in effect levy taxes upon property taken by the United States in condemnation proceedings. This obviously is not so. The right to levy special assessments in no way enhanced the value of the property condemned. The compensation paid by the United States in these proceedings was full payment based upon the value of the property taken. In Monongahela Navigation Co. v. United States, supra, compensation was claimed for the value of the franchise to collect tolls. There is no question that a right to collect tolls is a property right and upon the taking in condemnation compensation must be made.

■■ The People of Puerto Rico, apparently realizing the weakness of its argument that the right to make future assessments is compensable in a condemnation proceeding, finally comes to the position that it has a lien upon the lands in question for the assessments which it may levy in the future, and that this condemnation proceeding destroyed its lien. We are not entirely satisfied that the People of Puerto Rico on this record may take its present position. Originally it made the claim for additional compensation against the United States for the cost of readjusting its irrigation system. The lower court, in its order of dismissal, denied the claim of the People of Puerto Rico for additional compensation. In its statement of points on appeal appellant relies for reversal of the judgment solely upon this claim. In its reply brief, however, it takes a different position and makes the following statement:

"It is wholly immaterial, at this time, whether or not appellee's contention * * * that:

"'In any event even if the claim were valid it could only be asserted against the awards for the land taken, not against the condemnor', is correct. In any case the individual owners of those lands are parties to this proceeding, and are still subject to the jurisdiction of this Court and the District Court; and the final determination of the individual awards appears to to be still subject to the final decision and action of the District Court pursuant to this Court's direction on this appeal."

We do not believe that the shift from its original position, that is, a claim for additional compensation against the United States, to its present claim of compensation for future assessments secured by a lien upon the land in the irrigation district, is an immaterial one. As a matter of fact, if the People of Puerto Rico has a lien its proper course of action is against the award and is not a claim for additional compensation against the United States. In such event the United States has no real interest in the disposition of this case for it will be required to pay no more into the registry of the court regardless of the validity of the alleged lien. The parties in interest would be the People of Puerto Rico and the landowners whose lands are situated in the irrigation system. South Carolina Public Service Authority v. 11,754.8 Acres of land, 4 Cir., 1941, 123 F.2d 738; United States v. Greer Drainage Dist. of Marshall and Lafayette Counties, Mississippi, et al., 5 Cir., 1941, 121 F.2d 675; Coggeshall v. United States, 4 Cir., 1938, 95 F.2d 986, 990; Cobo v. United States, 6 Cir., 1938, 94 F.2d 351, 353; City of St. Louis v. Dyer, 8 Cir., 1932, 56 F.2d 842, 845.

As far as we know, however, the award has not been distributed. The People of Puerto Rico in a disclaimer filed January 14, 1942, made the following statement:

"Now, wherefore, The People of Puerto Rico on its own behalf and on behalf of the Isabela Irrigation Service, hereby formally disclaims to hold any—claim or lien of any nature whatsoever upon the lands of any persons whose property was condemned within this proceeding other than those specifically mentioned and designated in the list hereto attached, and expressly consents to the distribution of any amounts of money which may be deposited in the registry of this court to the benefit of those persons who do not appear from the above-designated list * * *".

Apparently, therefore, it has not relinquished its claim of a lien upon the funds paid for the property under discussion which are undistributed and it may even

now commence an action to satisfy its lien. In view of the fact that this issue may hereafter be raised in the lower court, and since it has been argued before us, we shall dispose of it in order to save the parties unnecessary litigation.

 This issue turns upon a proper interpretation of the pertinent statutes dealing with the creation of the irrigation system, the issuance of the bonds in question, and the assessments of the special levies and taxes. Section 8 of Act No. 59, supra, provided that the People of Puerto Rico irrevocably pledged its good faith for the payment of the interest and principal of the bonds, and it further provided "the foregoing provisions regarding the payment of interest on the said bonds and the payment of the principal, shall be deemed to be in the nature of a continuous appropriation and be sufficient authorization to the Treasurer of Porto Rico to make such payments, and no further appropriation for such purpose shall be required." Section 29 of the Public Irrigation Law provided that the Treasurer of Puerto Rico should calculate the amount of the interest and principal due upon the outstanding bonds for the ensuing fiscal year and the estimated amount for the cost of the operation and maintenance of the irrigation system, and after taking into consideration certain other sums which we need not discuss, the amount finally determined by him constituted the total sum to be assessed for the fiscal year and this sum was required to be levied upon the land included in the irrigation district. Section 29 further provided:

"Assessments under the foregoing provisions shall be made upon each particular tract of land in the proportion that the area of such tract of land bears to the whole number of acres included in the said permanent irrigation district. The amounts resulting from such computation * * * shall be extended upon the taxroll for the different tracts at the time comprising the permanent irrigation district. The taxroll so extended shall be completed by the treasurer of Porto Rico on or before the first day of July of each year, and is hereby imposed as a charge upon the said lands (but not as a personal liability upon the owners thereof) in favor of the People of Porto Rico and shall constitute a tax the lien of which shall be superior and prior in law to any right, claim or lien of any other nature, save and except the general taxes of Porto Rico as provided by law * * *."

It is the contention of the People of Puerto Rico that the duty of the Treasurer was a ministerial one and that under the provisions of the Act in question there was a continuing requirement that the land should be assessed for the payment of the interest and principal of the bonds and that, therefore, the People of Puerto Rico had a presently existing lien upon all the lands in the irrigation district for the purpose of collecting these special assessments. When the United States condemned these lands it destroyed this lien. With this contention we cannot agree. It may be admitted that the duties of the Treasurer were clearly prescribed by the various statutes and that, therefore, what was done by him was purely ministerial, but this does not change the nature of the assessments on the property in question. It is clear from a reading of the sections which we have set forth that the lands in question were to be annually assessed to meet the annual interest and principal payments of the bonds. Since the lien in favor of the People of Puerto Rico arose only after the Treasurer made his annual assessments, there was a presently existing lien only from such time until the tax was paid. Liens for taxes to be assessed in the future can at the most be potential rather than present liens and as such cannot be satisfied out of moneys paid into court under 40 U.S.C.A. § 258a. People of Puerto Rico v. United States, 1 Cir., 1942, 131 F.2d 151. The People of Puerto Rico could have provided that the amounts required to pay the principal and interest on the bonds and the cost of maintaining and operating the irrigation system should constitute a lien in its favor upon the property but this was not done. There is no justification for giving a liberal construction to statutory provisions creating a lien particularly when, as here, the statute is clear that the Legislature provided that the lien should cover only annual assessments. See 5 McQuillan, supra, § 2258, pp. 786 et seq.

We think Mullen Benevolent Corporation v. United States, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192, cited by the appellee, is in point and bears a close resemblance to the case at bar. In that case, an action was brought to recover a balance due on bonds issued by the City of American Falls, Idaho. The bonds were issued to

finance the cost of constructing sidewalks and sewers in certain improvement districts, and special assessments were levied on the lands in the districts in order to cover the payment of the principal and interest of the bonds. There was authority in case of a deficiency in the original assessments to reassess the property in the districts for the amount of the deficiency. By 1927 the United States had either purchased or condemned all the property in the districts. It was generally known by this time, however, that the original assessments were insufficient to pay the interest and the principal of the bonds. By ordinance enacted July 3, 1928, and proceedings pursuant to it, the city reassessed all the land within the districts. As the land was then owned by the United States the assessments were a nullity. The position taken by the bondholders in that case was that the bonds were property and, in the alternative, that they were liens actual or inchoate on the realty. Since a lien could not be foreclosed against lands owned by the United States, it was asserted that the respondent's acquisition of the land destroyed the value of the securities and gave rise to an implied promise to pay the remaining sums due the bondholders. The court held that the United States did not take the bonds nor did it in any way appropriate the right to make future assessments. As it said (290 U.S. at pages 94, 95, 54 S.Ct. at page 40, 78 L.Ed. 192): "By purchase of the lands the United States at most frustrated action by the city to replenish the assessment funds to which alone the bondholder can look for payment of his bonds. But this was not a taking of the bondholder's property." At the time of condemnation in that case there was no presently existing lien but there was a right to make reassessments. In the instant case, as we pointed out, there was no presently existing lien upon the lands in question but there was a right to make future assessments at the time the property was condemned. We see no great difference in a right to make future assessments and a right to make a reassessment.

The People of Puerto Rico seeks to distinguish Mullen Benevolent Corporation v. United States, supra, from the case at bar on the grounds that (a) there, the bonds were not the direct obligation of the City of American Falls, whereas, here, the People of Puerto Rico pledged its good faith that the bonds would be paid, and (b)

there, all the assessments made pursuant to the original ordinance had been fully paid or discharged, and that in order to provide for the payment of the deficiency in the original assessment a new ordinance was required, whereas here, all the taxes and assessments falling due in the future were the result of the original legislative action taken by the People of Puerto Rico prior to the institution of these condemnation proceedings. Granted that the differences pointed out by the People of Puerto Rico exist, nevertheless, they do not constitute a sufficient basis for deviating from the holding of the court in that case.

The judgment of the District Court is affirmed.

MAGRUDER, Circuit Judge, heard the argument, but through absence was unable to participate in the decision of this case.