**UNITED STATES et al. v. CITY OF MILWAUKEE.**

**Civ. A. No. 745.**

District Court, E. D. Wisconsin.

March 25, 1943.

B. J. Husting, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., and Thomas L. McKevitt, Department of Justice, of Washington, D. C., for plaintiffs.

Walter J. Mattison, City Atty., and Omar T. McMahon, Asst. City Atty., both

of Milwaukee, Wis., for defendants City of Milwaukee and J. J. Krueger.

Herbert J. Steffes, Dist. Atty., Oliver L. O'Boyle, Corporation Counsel, and C. Stanley Perry, Asst. Corporation Counsel, all of Milwaukee, Wis., for defendants County of Milwaukee and C. M. Sommers.

DUFFY, District Judge.

This is an action for a declaratory judgment asking this court to establish a tax exempt status for certain real estate known as the "Parklawn Housing Project", owned by the United States and located in the city of Milwaukee, Wisconsin. Injunctive relief is also asked against various taxing officials for the purpose of restraining attempts to collect taxes which have already been assessed. Answers have been filed and the plaintiffs and the defendants have both moved for judgment upon the pleadings.

Five hundred eighteen families occupy the housing units of Parklawn. It is built on real estate acquired by the United States in 1935, pursuant to authority granted in Sec. 202, Title II of the National Industrial Recovery Act of June 16, 1933, 40 U.S.C.A. § 402. The units in this project have been occupied since September 1, 1937. Parklawn was first administered by the Federal Emergency Administration of Public Works and was thereafter transferred to the United States Housing Authority which, pursuant to Executive Order No. 9070, dated February 24, 1942, 50 U.S.C.A.Appendix, § 601 note, is now known as the Federal Public Housing Authority. It is admitted that the project provides no educational facilities, and that the city has established, operates and maintains numerous services for the benefit of Parklawn residents. The water service is the only one of the city's services which is paid for by the federal government.

After the amendment to Sec. 70.11, Wisconsin Statutes, which became effective May 9, 1941 (Chap. 86, Laws of Wis.1941), the property in Parklawn was assessed for the year 1941 at $139,000 for the land and $1,623,500 for the buildings and improvements. These taxes were not paid and became delinquent on January 31, 1942. The payment of $44,062.50, plus interest, would be required to redeem the taxes which have been assessed for 1941. Taxes have also been assessed for 1942, and the city and county admit that they intend to assess and levy similar taxes for subsequent years. The answers set forth various reasons why the city and county consider these taxes to be lawful, and why they claim the unpaid taxes are a lien upon the real estate in question. The answers also set forth that prior to the acquisition of the land neither the plaintiffs nor any federal agency ever made application to the Governor of Wisconsin, pursuant to the provisions of Sec. 1.03, Wisconsin Statutes, by which consent of the State may be obtained, and that no certificate of consent was ever issued to the plaintiffs or any federal agency.

The fourth defense, which is set forth in the alternative, alleges that the federal statutes under which the Parklawn premises were authorized provide that the federal agency administering the property should make an agreement with the State, county and city for the payment of a fair, reasonable and adequate sum of money in reasonable proportion to and based upon the cost of the public and municipal services to be supplied; that no such agreement was ever made; that on March 29, 1938, the Administrator of the Housing Authority made an offer which was grossly inadequate, unreasonable, and arbitrary, and which offer was never accepted; and that no relief should be granted to the plaintiffs by this court unless and until the plaintiffs offer an adequate, reasonable, fair and just sum in keeping with the provisions and intent of the federal statutes applicable.

The city has presented an ably prepared brief in which it contends in substance that the United States Constitution does not expressly or by implication grant tax freedom to the premises in question; that such tax freedom could only be obtained with the consent of the State, and that such consent is a condition precedent and was not obtained with reference to Parklawn; that to give the property in Parklawn tax freedom would be an invasion of State sovereignty; that any tax exemption must be expressed by clear and unambiguous authority; and that the Parklawn project is not an essential governmental activity, and that the federal government in its Parklawn activities is merely acting as a landlord in a proprietary capacity. The brief also contends that the United States must do equity if it expects to receive equity, and that relief should be denied until the Housing Au-

438

thority makes a fair and adequate offer in lieu of taxes.

In its brief the city of Milwaukee makes a strong case for the contention that such cases in the United States Supreme Court as McCulloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579, and Van Brocklin v. State of Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845, were based upon unsound constitutional principles. The defendants urge that this court should not hesitate to depart from the holding in the Van Brocklin case, pointing out that the Supreme Court had recently departed from its former decision in Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1.

For the Supreme Court to determine that it will not adhere to one of its earlier decisions is one thing, but it is quite a different matter to suggest that a district court should overrule a principle of law laid down by our highest tribunal. I recognize that recently a three-judge federal court refused to follow the decision of the United States Supreme Court as announced in Minersville School District v. Gobitis, 310 U.S. 586, 60 S.Ct. 1010, 84 L.Ed. 1375, 127 A.L.R. 1493, the so-called "Flag Salute Case". However in that case the Chief Justice had dissented. Thereafter three more of the justices announced that in their opinion the Gobitis case had been wrongly decided, and that they now agreed with the dissenting opinion. As there were then eight justices on the court, this amounted to an equal division, and a redetermination of the question would depend on the viewpoint of the newly appointed justice.

I have no such advance information of any change of heart by the Supreme Court so far as the question considered in the Van Brocklin case is concerned. No statement of the court in other decisions has been called to my attention to indicate that they no longer adhere to the doctrine laid down in that opinion. In fact the Van Brocklin case has been cited with approval by the Supreme Court in later decisions, such as Lee et al. v. Osceola & Little River Road Improvement District, No. 1 of Mississippi County, Ark., 268 U.S. 643, 645, 45 S.Ct. 620, 69 L.Ed. 1133; City of New Brunswick v. United States, 276 U. S. 547, 48 S.Ct. 371, 72 L.Ed. 693; Mullen Benevolent Corp. v. United States, 290 U.S. 89, 91, 54 S.Ct. 38, 78 L.Ed. 192; and Graves v. People of State of New York Ex Rel. O'Keefe, 306 U.S. 466, 477, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466.

The issue in the Van Brocklin case is clearly stated by the court (117 U.S. p. 153, 6 S.Ct. page 672, 29 L.Ed. 845): "The judgment of the supreme court of Tennessee rests upon the position that these lands, although lawfully purchased by the United States, and owned by the United States at the time of being taxed under the laws of the state, were not exempt from state taxation, because they had not been expressly ceded by the state to the United States." This is exactly the contention set forth in several forms by the defendants in the case at bar. The Supreme Court, in the Van Brocklin case went on to say (117 U.S. p. 154, 6 S.Ct. page 672, 29 L.Ed. 845): " * * * So the United States, at the discretion of Congress, may acquire and hold real property in any state, whenever such property is needed for the use of the government in the execution of any of its powers, whether for arsenals, fortifications, light-houses, custom-houses, court-houses, barracks or hospitals, or for any other of the many public purposes for which such property is used; and when the property cannot be acquired by voluntary arrangement with the owners, it may be taken against their will, by the United States, in the exercise of the power of eminent domain, upon making just compensation, with or without a concurrent act of the state in which the land is situated. * * *"

Low-cost housing projects such as Parklawn were authorized by Congress by laws which were enacted under the general welfare clause of the United States Constitution. Low-cost housing has been declared by Congress to be a public use. Such a declaration will be respected by the courts, unless it is without any reasonable foundation whatsoever. The problem of housing, however, is directly connected with the public morals, health and safety. There can be no serious doubt but that the Parklawn property is owned by the United States for a public purpose.

The Van Brocklin opinion invites attention to the enabling acts of various States which came into the Union. Sec. 7, subd. 5, of the Enabling Act under which Wisconsin came into the Union provides: " * * * the constitution of said state shall provide * * * that no tax shall be imposed on lands the property of the United States." Sec. 2 of Article II of the Wis--

consin Constitution provides: "* * * and no tax shall be imposed on land the property of the United States; * * *." The act of Congress authorizing low-cost housing provides that such property shall be exempt from all taxation imposed by any State, county, municipality or local taxing authority. Title 42 U.S.C.A. § 1405(e).

■ This court feels that the situation in the case at bar is governed by the rule announced in the Van Brocklin case. If that rule is to be changed, such change will have to come from the Supreme Court. Under the authority of the Van Brocklin case, I must hold that the property at Parklawn is exempt from the taxes which the State of Wisconsin, the county of Milwaukee, and the city of Milwaukee have attempted to levy against it. No interlocutory injunction was sought in this action, and no contention has been made by any of the parties that a three-judge court should pass on the issues herein. All parties apparently are in agreement that if the property at Parklawn enjoys immunity from the State, county and city taxes, an injunction is proper save only for the contention of the city alleged in its fourth (alternative) defense.

■ The provision of the act authorizing the administrator to make payments in lieu of taxes is, "The Authority may enter into agreements to pay annual sums in lieu of taxes to any State or political subdivision thereof with respect to any real property owned by the Authority. The amount so paid for any year upon any such property shall not exceed the taxes that would be paid to the State or subdivision, as the case may be, upon such property if it were not exempt from taxation thereby." 42 U.S.C.A. § 1413(c). While the sum which was offered to the city does appear very small compared to the value of the facilities furnished by the city and county, this court has no evidence before it upon which a determination could be made as to the adequacy or inadequacy of the offer. Furthermore, that would seem to be entirely an administrative function. There is nothing mandatory in the language of the act. The court is without any power to pass upon the correctness of the determination as made.

The plaintiffs are entitled to a decree that the property in question is tax exempt, and to an injunction as prayed for in the complaint.