## UNITED STATES et al. v. CITY OF MILWAUKEE et al.

### No. 8333.

Circuit Court of Appeals, Seventh Circuit.

Jan. 20, 1944.

Walter J. Mattison, Omar T. McMahon, James J. Kerwin, O. L. O'Boyle, and C. Stanley Perry, all of Milwaukee, Wis., for appellants.

B. J. Husting and E. J. Koelzer, both of Milwaukee, Wis., Norman M. Littell, Vernon L. Wilkinson, and Thomas L. McKevitt, Department of Justice, all of Washington, D. C., for appellees.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment entered April 17, 1943, in a suit instituted by the United States and the Federal Public Housing Authority to obtain a declaratory judgment establishing the tax exempt status of property owned by plaintiffs and used as a site for a low-cost housing project. Injunctive relief was also sought to prevent the threatened collection of past and future tax assessments. Both sides moved for judgment on the pleadings, and the judgment appealed from provided the relief sought by plaintiffs.

The essential allegations of the complaint are: (1) ownership by the plaintiffs of certain real estate designated as Parklawn, situated in the city of Milwaukee; (2) the property's tax immunity status; (3) the existence of tax assessments against the land on the tax rolls of defendants, and (4) defendants' intention to enforce such taxes. Defendants, by answers, admitted plaintiffs' title to the property and the absence of an adequate remedy at law. As a defense to the relief sought, they alleged in substance: (1) the acquirement of title in 1935 by the United States Government

from private individuals or corporations which for many years prior thereto had paid taxes upon such property; (2) the use of such property by plaintiffs since 1937 as a housing project; (3) the furnishing by defendants of services, such as fire and police protection, hospital facilities and an educational system by the city and state to the occupants of the project; (4) the state laws concerning the taxation of real property, particularly c. 86, Wis.Laws 1941, specifically excluding from the tax exempt list property of the United States or its instrumentalities used for residential income producing purposes; (5) the absence of exclusive federal jurisdiction over the property concerned; and (6) certain negotiations between the city of Milwaukee and the United States Housing Authority in connection with proposed payments in lieu of taxes.

It is further disclosed that the property involved was purchased pursuant to the authority of Title II, Sec. 203 of the National Recovery Act of June 16, 1933, 48 Stat. 202, 40 U.S.C.A. § 403. Thereafter, the United States, first through the Federal Emergency Administrator of Public Works and later through the United States Housing Authority, constructed on the land so acquired 518 separate family residential units as a low-cost housing project. On September 1, 1937, Congress passed the so-called "United States Housing Act of 1937," 50 Stat. 888, 899, 42 U.S.C.A. §§ 1401–1430. To effectuate the purpose of the Act, Congress created a wholly-owned corporation, to be known as the United States Housing Authority. By executive order dated February 24, 1942, the name of such Authority was changed to the Federal Public Housing Authority (title of instant plaintiff). This Authority was specifically described, Sec. 1403, as an agency and instrumentality of the United States. It was also provided, Sec. 1404(d), that all previous slum clearance projects, such as the instant one, constructed under the authority of earlier acts of Congress, should be transferred to and administered by the newly created United States Housing Authority. The Authority was given power to administer existing projects, Secs. 1404(d), 1412(e), and also to transfer the actual administration of such projects to state housing agencies, Sec. 1412(a).

Thus the issue for decision is whether land owned by the United States, through the Federal Public Housing Authority, and used as a site for a low-cost housing project, is subject to taxation by the political subdivisions of the state of Wisconsin.

Defendants advance a forceable and appealing argument that property of the Federal Government and its agencies, used for purposes such as in the instant case, was not intended by the makers of the Constitution to be exempt from local taxation. Persuasive as the argument may be, however, it comes fifty and perhaps one hundred years too late. Substantially every contention, and certainly the ultimate question for decision, was decided in favor of the government in Van Brocklin v. Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845, wherein the court reversed a decision of the Supreme Court of Tennessee, which had held taxable real property of the United States acquired by tax foreclosure. In that case, the court placed great stress upon McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579. It was in the Tennessee case, however, that the reasoning of the McCulloch case was first applied to taxes on real property, title of which was held by the Federal Government. Defendants recognize the controlling force of this case, but argue that the Constitution was improperly construed and that the holding should not be followed. This, to say the least, is a novel suggestion. Tempting as such invitation might be on some occasions, we are bound to decline it in the present instance as well as all others. Furthermore, Van Brocklin v. Tennessee is not an isolated case, the doctrine of which has been permitted to slumber untouched during the intervening years. In fact, it has often been cited and quoted with approval. In Lee et al. v. Osceola & Little River Road Improvement District, 268 U.S. 643, 645, 45 S.Ct. 620, 69 L.Ed. 1133, the court stated: "It was settled many years ago that the property of the United States is exempt by the Constitution from taxation under the authority of a State so long as title remains in the United States. Van Brocklin v. State of Tennessee, 117 U.S. 151, 180, 6 S.Ct. 670, 29 L.Ed. 845."

In the recent case of Mayo et al. v. United States, 319 U.S. 441, 447, 63 S.Ct. 1137, 1141, 87 L.Ed. 1504, the court in a footnote stated: "A state cannot tax land of the United States situated within the state even though the state has not ceded sovereignty to the United States. Van Brocklin v. Tennessee, 117 U.S. 151, 177, 6 S.Ct. 670, 684, 29 L.Ed. 845."

See, also, Mullen Benevolent Corp. v. United States, 290 U.S. 89, 91, 54 S.Ct. 38, 78 L.Ed. 192; Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 477, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466.

Defendants press their contention from many angles. In view of what we have already stated, no good purpose could be served in any detailed discussion of the points argued. The power of Congress under the General Welfare provision of the Constitution to provide for the ac-quisition of property for low-cost housing is conceded. A theory is advanced that because the property was not acquired in conformity with Art. I, Sec. 8, cl. 17, that is, with "the consent of the legislature of the State," that the Federal Government did not acquire exclusive jurisdiction and was without power to grant tax immunity. Con-cededly, the government did not acquire exclusive jurisdiction; in fact, Congress expressly disclaimed such jurisdiction as to property acquired for any low-cost housing or slum clearance project. Sec. 1, 49 Stat. 2025, 40 U.S.C.A. § 421. It would seem certain that the instant question could not arise as to property over which the Federal Government had taken exclusive jurisdiction. Surely no local taxing agency would attempt to levy a tax on such property. It is only in cases where jurisdiction is divided that the question could logically arise. Furthermore, the government did not have ex-clusive jurisdiction in Van Brocklin v. Tennessee, supra, and the court expressly held this to be immaterial. 117 U.S. at page 180, 6 S.Ct. at page 686, 29 L.Ed. 845. Also, as heretofore shown, the court in Mayo et al. v. United States, supra, applied the im-munity doctrine "even though the state has not ceded sovereignty to the United States."

Another insurmountable obstacle confronting the defendants is the fact that Congress in the so-called "United States Housing Act of 1937" expressly exempted property, such as here sought to be taxed, "from all taxation now or hereafter imposed by the United States or by any State, county, municipality, or local taxing authority." Sec. 5(e), 42 U.S.C.A. § 1405(e). The power of Congress to declare its instrumentalities immune from state taxation is no longer open to question. In speaking of a provision in the Home Own-ers' Loan Act, 12 U.S.C.A. § 1461 et seq., of the same purport as that now before us, the court in Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 33, 60 S.Ct. 15, 18, 84 L. Ed. 11, 124 A.L.R. 1263, said: "Since Congress had the constitutional authority to enact this provision, it is binding upon this Court as the supreme law of the land."

See, also, Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 212, 41 S.Ct. 243, 65 L.Ed. 577; Federal Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 103, 62 S.Ct. 1, 86 L.Ed. 65.

■ Another point discussed is that title to the property was held by a government instrumentality rather than the government itself. The cases make plain, however, that this makes no difference. As was said in City of New Brunswick v. United States, 276 U.S. 547, 555, 48 S.Ct. 371, 372, 72 L.Ed. 693: "It is unquestioned that so long as the Corporation held title to the lots as an instrumentality of the United States and solely for its use and benefit, they were not subject to taxation by the City."

See, also, Pittman v. Home Owners' Loan Corp., supra, and Federal Land Bank v. Bismarck Lumber Co., supra.

■ In the light of what has been said, it would be futile to discuss or construe either the statutory or constitutional provisions of the state of Wisconsin upon which defendants rely. It is sufficient to say if the enactments of the state contravene those of the Federal Government, in respect to taxability of government property, they cannot be given effect.

■ Lastly, defendants assert equitable relief should be denied plaintiffs because they made an offer in lieu of taxes which was so nominal, unreasonable and inadequate as to constitute a mere arbitrary offer. The second section of the Act, 40 U.S.C.A. § 422, heretofore noted, in which Congress disclaimed exclusive jurisdiction, also provides: " * * * the Federal Emergency Administrator of Public Works is authorized to enter into an agreement, and to consent to the renewal or alteration thereof, with such States or subdivisions for the payment by the United States of sums in lieu of taxes."

We think defendants' contention in this respect must be denied. The language just quoted does not direct or command the Administrator to make such agreements. The authority conferred upon him is merely permissive. Congress having declared the property immune from taxation, it would appear inconsistent to say that an

injunction should not issue against its levy because the Administrator had not exercised the authority conferred on him to make an offer in "lieu of taxes" or because his offer when made was deemed unreasonable by the taxing authorities.

The judgment is affirmed.

SPARKS, Circuit Judge, concurs in the result.