## MUNHALL BOROUGH v. UNITED STATES.

### No. 9126.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 7, 1946.

Decided Jan. 22, 1947.

John E. Evans, Sr., of Pittsburgh, Pa. (Evans, Evans & Spinelli, of Pittsburgh, Pa., on the brief), for appellant.

Roger P. Marquis, of Washington, D.C., Dept. of Justice (David L. Bazelon, Asst. Atty. Gen., and Charles F. Uhl, U. S. Atty., and Elliott W. Finkel, Sp. Asst. to the U. S. Atty., both of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS and McLAUGHLIN, Circuit Judges, and RODNEY, District Judge.

McLAUGHLIN, Circuit Judge.

On June 26, 1941 the United States instituted proceedings to acquire privately owned lands in the Borough of Munhall, Pennsylvania, for a defense housing project. Later an amended petition was filed covering a one-year easement leading to the West Run sewer of the Borough and a one-year easement to connect with and discharge sewage into that sewer. On this appeal we are concerned solely with the value of the latter easement, which by a further amendment to the petition and a

supplementary declaration of taking, was made perpetual. The parties waived appointment of viewers. The question of compensation to the Borough for the connecting easement was tried December 17, 1945, before the District Court sitting with a jury and resulted in a verdict for the Borough in the amount of $7,200. The Borough's motion for a new trial was denied February 18, 1946 and this appeal followed.

Appellant concedes that the ordinary test of market value is not available in the present circumstances and, in accordance with United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55, agrees that since the easement has no market, resort must be had to other data to ascertain its value. The Trial Judge limited appellant's damages to that proportion of the total expense of the sewer line as constructed which the Housing Authority use bears to the balance of the total use. Appellant does not object to this as far as it goes but contends that in addition it should have been allowed to include in its damages a proper and fair charge for the use of the sewer and a further charge for a share of the annual operation expense of the sewer's pumping station. The government's position is that the taking has not interfered with use of the sewer nor imposed any financial burden upon appellant either by construction of additional facilities or by increased operating expense; therefore appellant has failed to establish a right to more than nominal damages. In any event the government urges that appellant's claim for operational charges lacks merit.

There were three tracts of vacant land embraced in the original condemnation. The Borough had an agreement with the owners of two of these whereby the latter agreed to pay the Borough $100 for each dwelling (thereafter erected on the property) using the sewer. There is a dispute between the government and the Borough as to whether that fee included the cost of the necessary lateral connection. It is admitted that the government at its own expense constructed all sewer laterals within the housing project.

■ The appellant argues that the Trial Court erred in refusing to receive in evidence the above-mentioned agreement offered in substantiation of the Borough's claim for use. Since the contract related to only two of the three parcels of land condemned, specific performance of that contract would not have been sufficient for the government purpose. The situation is quite unlike that found in Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463, where the United States appropriated locks and dams of the navigation company and in effect took over the enterprise. The contract here was frustrated, which is essentially different from being appropriated. United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 282, 63 S.Ct. 1047, 87 L.Ed. 1390. The instant proceedings were under the Lanham Act of October 14, 1940, as amended, 42 U.S.C.A. § 1532, which authorizes the acquisition of real property. The sewer connection agreement did not enter into the government's action in any way and no attempt was made to obtain benefits under it.[1] The government bases its right to connect with the sewer solely upon the easement acquired by it through condemnation. The problem is clearly within the doctrine of Omnia Commercial Co. v. United States, 261 U.S. 502, 510, 43 S.Ct. 437, 438, 67 L.Ed. 773, where the Supreme Court said, "If under any power, a contract or other property is taken for public use, the government is liable; but, if injured or destroyed by lawful action, without a taking, the government is not liable." And see Brooks-Scanlon Corporation v. United States, 265 U.S. 106, 44 S.Ct. 471, 68 L.Ed. 934; Mullen Benevolent Corporation v. United States, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192.

■ Appellant's second point relates to the exclusion of evidence of value which was based on charges to other sewer users. The particular sewer system serves a portion of the City of Pittsburgh by contract between the two municipalities. Under

---

[1] As the government interprets the contract; the costs of construction of the contemplated laterals are included in the connection fees to be paid the Borough.

that contract there is a front foot fee assessed against each dwelling using the sewer for which the Borough made the pipe connections. There is also a charge for maintenance and operation of the sewer pumping station. Certain users within the Borough have the same kind of arrangements except that, as to them, operation and maintenance expense is taken care of by taxes. The appellee suggests that this question is not properly before us but the record indicates to the contrary. Appellant's offer of evidence on the proposition was rejected by the Trial Judge. It is true that later some testimony regarding the Pittsburgh contract did come into the case during cross-examination of a government witness. While this was not specifically alluded to in the Court's charge, the latter did confine plaintiff's recovery to cost of the sewer. Exception was taken by the Borough to "the refusal of the Court to permit the jury to consider the testimony to the effect that $37.50 per dwelling unit had been used with the City of Pittsburgh and other layouts entering the West Run sewer."

As we see it, the Trial Court was clearly right in refusing proof of the Pittsburgh contract and other agreements of that type. The charges under those agreements were based on individual connections made by the Borough and could not fairly be used as a standard of comparison in an utterly dissimilar situation where the government was simply acquiring the right to connect its main trunk sewer to the Borough's West Run sewer and with the government having constructed all the individual connections at its own cost.

It is finally urged that error was committed in refusing to allow appellant to recover the present worth of a sum of money sufficient to reimburse appellant for the proportionate share of the government in the annual cost of pumping sewage. The Borough does not make any separate charge for such expenses but includes them in taxes. Section 1546 of the Lanham Act provides for payments of annual sums to local authorities in lieu of taxes.[2] Section 1524 of that Act states that defense housing projects shall be disposed of by the government as expeditiously as possible. The undisputed fact is that the government has been paying the appellant between $8,000 and $13,000 a year in lieu of taxes. Appellant nevertheless insists that its position under the Lanham Act is precarious in that payments to it as provided by the Act are dependent upon the government receiving rents and upon the discretion of the Administrator. It was because the government has in effect been paying taxes since it took over the property and will be expected to make such payments during all of the time it is in possession of that property, that the District Judge refused to permit this item of damage to go to the jury. He said in his charge, " * * * the Government should be in no worse situation in so far as that is concerned than the ordinary taxpayer, who pays for the maintenance and upkeep of the sewer by means of taxes."

Even if the Lanham Act payments to the Borough should be dependent upon receipt by the government of rent from the defense housing (and we express no opinion as to that) the evidence indicates that there has not been the slightest trouble regarding those payments since the project was constructed nor is there any inference of such difficulty arising during whatever further period the government may retain possession. The case is also barren of proof that the appellant has ever been treated unjustly by the Administrator. The latter of course cannot be unreasonable in his use of the discretion given him by the Act and the Borough would have its affirmative remedies against any attempted arbitrary or

---

[2] Section 1546 reads: "The Administrator shall pay from rentals annual sums in lieu of taxes to any State and/or political subdivision thereof, with respect to any real property acquired and held by him under subchapters II–IV of this chapter, including improvements thereon. The amount so paid for any year upon such property shall approximate the taxes which would be paid to the State and/or subdivision, as the case may be, upon such property if it were not exempt from taxation, with such allowance as may be considered by him to be appropriate for expenditure by the Government for streets, utilities, or other public services to serve such property."

capricious conduct on his part. The Borough is entitled to be fully compensated for any loss to it arising from the government exercising its right of eminent domain over the sewer easement but that loss does not include alleged damage based on such remote possibilities as asserted by appellant. Mayor & City Council of City of Baltimore v. United States, 4 Cir. 147 F.2d 786. And see People of Puerto Rico v. United States, 1 Cir., 132 F.2d 220, 222, certiorari denied 319 U.S. 752, 63 S.Ct. 1165, 87 L.Ed. 1706, and Woodville v. United States, 1946, 10 Cir., 152 F.2d 735, 737, certiorari denied 66 S.Ct. 1021.

Affirmed.