The decree of the district court will be affirmed.

**SOUTHERN AMUSEMENT COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17270.

United States Court of Appeals
Fifth Circuit.

March 24, 1959.

Rehearing Denied April 23, 1959.

Ernest G. LaFleur, Jr., Edward M. Carmouche, Lake Charles, La. (Carmouche, Martin & LaFleur, Lake Charles, La., on the brief), for appellant-cross-appellee.

A. Donald Mileur, Atty., Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., T. Fitzhugh Wilson, U. S. Atty., Shreveport, La. (Edmund E. Woodley, Asst. U. S. Atty., Shreveport, La., on the brief), for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

This appeal is from a judgment in a condemnation proceeding by the United States of 52.041 acres of land near Lake Charles, Louisiana for use in connection with the Lake Charles Air Force Base. The land was owned by appellant Southern Amusement Company, which owned an additional 10.2 acres contiguous to that condemned. On this 10.2 acres it operated the Round-Up Drive-In Theater.

The United States filed its complaint and declaration of taking February 1, 1956, depositing as estimated just compensation the sum of $78,061.50. Both parties introduced evidence of market value of the condemned land for the highest and most profitable use for which the property was adaptable and needed or likely to be needed in the reasonably near future to the extent that

such prospect or demand affected market value. It is not questioned that this was the correct measure of compensation for the land taken.

Appellant's contention is that the trial court erred in refusing to permit it to present proof that the trend in the moving picture business was away from single-screen theaters such as appellant was operating to theaters with double screens, which required additional acreage; and that, by denying it the right to prove this possible prospective use, the court wrongfully declined to permit recovery of such severance damages as would ensue from the failure to permit this theory to be presented in the evidence.[1] There was no proof of unity of actual or contemplated use between the land condemned and the 10.2 acres retained by Southern. The absence of similar proof led us to reject like severance damages claimed by International Paper Company when the United States condemned a portion of its lands. 5 Cir., 1955, 227 F.2d 201.

Appellant was permitted to prove that substantially six acres of the land taken could best be used by adding it to the ten acres used as a drive-in theater, and to introduce expert testimony of the added value possessed by this six acres if it should be devoted to that particular use.[2] There was also proof by way of severance damages that an outlay of more than four thousand dollars would be entailed in erecting a fence between the land taken and that retained by appellant. The jury returned a verdict fixing the fair market value of the 52.-041 acres at $106,441.90, allowing nothing for severance damages.

What the court refused to permit appellant to prove was the speculative estimate of what the Round-Up Drive-In Theater would bring on the open market if appellant should decide to offer it for sale with the acreage then occupied by it as contrasted with such a possible offer with an acreage sufficient for the conversion of the theater into a double screen theater.[3]

1. The contention as expressed in appellant's brief may be thus epitomized:
 "The Trial Court in ruling out this evidence stated that So. Am. Co.'s claim for severance damages was in reality a claim for damages arising out of the frustration of a business hope and moreover that the chance of Round-Up's being united with any portion of the 52.041 acres taken by the U.S.A. is too remote and speculative to have any legitimate effect in this case. * * *
 "In determining the market value of the 52.041 acres taken it was not necessary to prove that So. Am. Co. was planning to sell this 52.041 acres to a subdivider. * * *
 "* * * why is it not also true that it makes no difference whether or not So. Am. Co. intended to expand the Round-Up into a twin screen. Maybe they were not interested in expansion at all; maybe they wanted to sell the Round-Up. The only important evidence is what a willing buyer would be looking for in deciding whether or not to purchase this drive-in and how much such a willing buyer would have paid for it prior to the taking as opposed to after the taking. * * *"

2. In admitting this testimony the court below stated:

"I will let Dr. Kushner testify to the value of the remaining land; that is to severance damage, by letting him put an estimate on what the market value of the remaining land was before the taking and what the market value of the remaining land was right after the taking.

3. The court's ruling on this character of evidence is illustrated by this statement made when it was tendered:
 "In other words, what you are willing to testify to is that what's left of the property does not permit an expansion and as a result of your being unable to expand it as a result of the property not being available so as to acquire the necessary land to expand, that you can't make it into a double screen theater and that a double screen theater is just a better financial operation than a single screen theater and therefore, a person would pay more for a single screen theater with property next to it available to make it into a double screen theater than they would for property where there is no property available, and that is just about your testimony, isn't it?
 "The Witness: Yes, sir.
 "The Court: And for the purpose of proving severance damages, the Court

■ This Court had a somewhat similar situation before it in Cameron Development Co. v. United States, 1944, 145 F.2d 209, 210, where the evidence showed that a tract of pasture land had been condemned by the United States which, after taking possession, excavated and removed approximately 83,000 cubic yards of shell marl which it utilized for the construction of runways. The trial court refused to permit several witnesses to testify that these deposits greatly enhanced the market value of the property. Approving this action and announcing principles applicable here, we stated in part:

"In determining this value, the highest and most profitable use for which the property is adaptable and needed, or is likely to be needed in the near future, is to be considered; but elements affecting value that depend upon events, which while possible are not fairly shown to be reasonably probable, should be excluded. The judicial ascertainment of fair market value may not rest upon speculation and conjecture, * * *

" * * * No evidence was offered to prove that any market existed, or was reasonably likely to exist in the near future, at which this shell could be profitably sold. * *

"The mere physical adaptability of the property to use as a source of supply of shell marl, in the absence of a market for its commercial production, did not effect an increase in its market value."

■■ A large number of cases was cited as authority for this statement and they have relevance here also. There is a good discussion by the Supreme Court of the rule that losses due to frustration of business plans are not or-

dinarily compensable, in Omnia Commercial Company, Inc. v. United States, 1923, 261 U.S. 502, 512–513, 43 S.Ct. 437, 67 L.Ed. 773; and that Court also used this applicable language in the condemnation case of Olson v. United States, 292 U.S. 246, 256–257, 54 S.Ct. 704, 709, 78 L.Ed. 1236:

" * * * Value to the taker of a piece of land combined with other parcels for public use is not the measure of or a guide to the compensation to which the owner is entitled. * * *

" * * * Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth. * * * * [4]

Under these authorities and the facts before the court we think the evidence was properly excluded.

■ The other point argued by appellant is that the trial court erred in declining to allow appellant interest on the amount deposited in court from October 9, 1956 through the date of the verdict, January 10, 1958. This argument is predicated entirely on an exchange of letters which took place in September and October, 1956, in which the United States Attorney wrote appellant's attorney that it was his purpose to draw an order, within about one week of October 2nd, that the money deposited be turned over to appellant. The United States Attorney did not prepare the order and neither did the attorney for the appellant, so that the money lay

will not permit that testimony. I think that gets the Court's ruling."

4. And see also United States v. Miller, 1943, 317 U.S. 369, 63 S.Ct. 276, 87 L. Ed. 336; United States ex rel. Tennessee Valley Authority v. Powelson,

1943, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; Mullen Benevolent Corp. v. United States, 1933, 290 U.S. 89, 54 S. Ct. 38, 78 L.Ed. 192; and Mitchell v. United States, 1925, 267 U.S. 341, 45 S. Ct. 293, 69 L.Ed. 644.

**38**

in the depository of the court for more that a year because no order was presented to the court for its withdrawal.

While it is unfortunate that the United States Attorney failed to perform the courtesy offered in his letter, the money was there subject to withdrawal at any time and appellant has no one to blame but himself that this interest was lost. At all events, the United States cannot be held liable for this interest.[5]

Finding no reversible error in the rulings complained of, the judgment is

Affirmed.

5. Act of February 26, 1931, 40 U.S.C.A. § 258a as amended; Atlantic Coast Line Railroad Co. v. United States, 5 Cir., 1943, 132 F.2d 959; and United States v. Certain Parcels of Land, 2 Cir., 1945, 151 F.2d 116.