## No. 14,363.

### Deepe *v.* United States by the City and County of Denver et al.

(86 P. [2d] 242)

Decided December 19, 1938.   Rehearing denied January 9, 1939.

Mr. Fred S. Caldwell, for plaintiff in error.

Mr. Malcolm Lindsey, Mr. Frank L. Hays, Mr. E. L. Fundingsland, for defendants in error.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

THE plaintiff in error Deepe filed a cross-petition in certain condemnation proceedings pending in the district court of Arapahoe county. The court's action in striking the cross-petition from the files is now before us for review.

The condemnation proceedings in question were instituted on behalf of the United States of America and the City and County of Denver against one Lyttle as respondent, by virtue of the eminent domain statutes of Colorado (c. 61, '35 C. S. A.) and under authority of an Act of Congress approved August 26, 1937, 50 Stat. at Large, Part 1, p. 857, c. 834. The petitioners thereby sought to condemn an eighty-acre farm in Arapahoe county for use by the United States as an aerial gunnery and bombing range appurtenant to a branch of the Air Corps Technical School.

The cross-petition alleges that Deepe is sole owner of a valuable public service telephone franchise in the town of Parker, Douglas county, Colorado, and vicinity; that the franchise covers a large territory in Douglas and Elbert counties and twenty sections of land in Arapahoe county; that he operates a public telephone service under the public franchise and for this purpose maintains a telephone exchange at Parker and has constructed, maintains, owns and operates rural telephone lines connecting said local exchange with rural subscribers throughout the territory covered by the franchise; that the respondent Lyttle now is and for a long time has been a patron of the cross-petitioner, and regularly contracted and paid for the telephone service at his rural home and residence on the eighty acres sought to be condemned; that the cross-petitioner operates his exchange and service in accordance with his franchise under the name of Cherry Creek Telephone Company; that in order to serve the public in accordance with the terms and provisions of his franchise he has gone to great expense in the matter of constructing, maintaining and operating his exchange and rural lines; that by condemning and taking the Lyttle farm for the

uses stated by the petitioners and by taking other adjacent and contiguous lands in the aforesaid twenty-section area in Arapahoe county for a like purpose the petitioners are confiscating and destroying approximately seven and one-half miles of cross-petitioner's telephone line as now constructed and maintained and are completely destroying his telephone franchise through all of the twenty sections of Arapahoe county land referred to; that the damage caused him by such taking of said lands and such impairment of said franchise, and by rendering said seven and one-half miles of his telephone lines useless, results regardless of whether all of said twenty-section area is condemned or title thereto is obtained by private purchase and agreement with the owner of said lands; that cross-petitioner's overhead expense in maintaining his Parker telephone exchange and rural telephone service throughout that part of the territory covered by his franchise, after said twenty Arapahoe county sections are eliminated therefrom, will be the same as it now is; that the materials and supplies which he now has on hand, amounting to several hundred dollars in value and purchased by him for the purpose of maintaining his telephone lines and rural telephone service and from time to time extending them to other potential patrons living in the aforesaid twenty sections, would be left on his hands and he will have no present use therefor and there is no prospect that he will in the near future have any use for such materials and supplies and therefore his investment in the same for some time to come will be a dead investment; that the petitioners will by the taking of the lands of said respondent Lyttle and by the taking and acquiring of other lands in said twenty sections cause damage to the cross-petitioner in the sum of $2,500.

The cross-petitioner prays for damages and demands a jury trial.

To the cross-petition the petitioners interposed a general demurrer and, at the suggestion of counsel for the cross-petitioner, the petitioners made a motion to strike

the cross-petition from the files. As already stated, this motion was sustained, the court holding that the cross-petition does not state facts sufficient to constitute a cause of action for intervention.

It is obvious that the cross-petitioner's allegations fall far short of entitling him to relief.

The implication, for instance, that by condemnation of the Lyttle farm the possible loss of the respondent Lyttle as a patron of the cross-petitioner's telephone exchange gives rise to a proper claim for damages is clearly without any sound basis. This is of no more consequence than would be a similar loss of business by reason of discontinuance of the Lyttle telephone due to a voluntary sale of the Lyttle land or to a discontinuance by Lyttle for any other reason or for no reason at all. If such discontinuance should violate a subsisting contract, the remedy would of course be an action on that contract and not relief in the condemnation proceedings.

Telephone and other public utilities, like other industries and individual enterprises, must naturally take their chances on possible changes in the business of a community, changes which may and often do vitally affect the business income, sometimes favorably, sometimes otherwise. Expectations of growth and development in a given territory, like the fear of permanent or temporary recessions or entire disappearance of business, may indeed count as elements of calculation in the planning of one's investments in such territory; but so long as changed conditions result from lawful activities they of themselves do not create vested interests if successful, nor, if adverse, do they supply a ground for charging the loss to others.

██ ██  The provision under which the cross-petitioner claims the right to intervene is section 12 of the Eminent Domain Act, supra. This section requires a showing that a cross-petitioner "is an owner or has an interest in the property sought to be taken or damaged by the petitioner." Deepe, the present cross-petitioner, plainly fails to bring himself within the reasonable meaning of the sec-

tion, for he alleges no facts which indicate any such ownership or interest in relation to the eighty-acre Lyttle farm, the only property here sought to be condemned. The power to take property by condemnation is a lawful one and belongs unconditionally to any person, natural or artificial, who can qualify under the legal requirements. The interest which, under the Constitution and statutes, entitles a person to compensation for injury must have a direct and actual concrete connection with the specific land attempted to be taken.

The fact that a reserve stock of materials and supplies for repair, replenishment or extension may or will eventually prove larger than will be needed in the future is of course irrelevant. Such an item is sought to be alleged by the cross-petitioner here, but it would manifestly be too speculative even to rank as an element of damages if a cause of action were sufficiently stated.

For the reasons given above, the district court was right in refusing to permit the cross-petitioner to intervene.

Judgment affirmed.

Mr. Justice Hilliard dissents.

Mr. Chief Justice Burke, Mr. Justice Young and Mr. Justice Holland not participating.

Mr. Justice Hilliard dissenting.

In a condemnation proceeding by the City and County of Denver to procure in behalf of the United States lands for a "bombing range" in connection with the United States Army Air Corps Technical School located at Denver, the respondent was one B. S. Lyttle, owner of certain of the lands in Arapahoe county being sought for that purpose, described as N. ½ and S. W. ¼, section 28, township 5 south, range 65 west. Before trial plaintiff in error Deepe filed a "cross-petition in intervention," which was stricken. His cross-petition reads:

"1. Cross-petitioner now is and at all times hereinaf-

ter mentioned was a citizen and resident of Douglas County, State of Colorado.

"2. Cross-petitioner is the sole owner of a valuable public service telephone franchise in the town of Parker, Douglas County, Colorado, and vicinity. Said franchise covers a larger territory in Douglas and Elbert Counties and twenty (20) sections of land in Arapahoe County, State of Colorado, all of which said twenty sections are in Township 5 South and Ranges 65 and 66 West of the Sixth Principal Meridian. Cross-petitioner operates a public telephone service under said public franchise and for that purpose maintains a telephone exchange at the town of Parker, and has constructed, maintains, owns and operates rural telephone lines connecting said local exchange with rural subscribers throughout the territory covered by his said franchise. The respondent herein, B. S. Lyttle, now is and for a long time prior hereto, has been a patron of cross-petitioner, and regularly contracted and paid for cross-petitioner's telephone service at his rural home and residence on the land which petitioners are seeking to condemn by this proceeding.

"3. Cross-petitioner operates said Parker telephone exchange and rural telephone service in accordance with his said public franchise under the name of Cherry Creek Telephone Co. In order to serve the public in accordance with the terms and provisions of his said public franchise, plaintiff has gone to great expense in the matter of constructing, maintaining and operating his said telephone exchange and the rural lines connecting said exchange with his rural patrons, one of whom as above stated, is the respondent, B. S. Lyttle. By condemning and taking for the uses stated by the petitioner herein the lands of the said respondent, B. S. Lyttle, and by taking for a like purpose other lands adjacent and contiguous in said twenty section area in Arapahoe County, petitioners are confiscating and destroying approximately seven and one-half miles of cross-petitioner's telephone lines as now constructed and maintained, and are completely destroy-

ing plaintiff's public telephone service franchise through all of that territory comprised by said twenty sections of land in Arapahoe County, hereinabove referred to; and the damage caused the cross-petitioner by such taking of said lands and such impairment of his public service telephone franchise and the rendering of said seven and one-half miles of his telephone lines useless, results, regardless of whether the petitioners condemn all of said twenty sections of land, or obtain for their purpose as declared in their petition on file herein, title to said lands by private purchase and agreement with the owners of said lands. Cross-petitioner's overhead in maintaining his Parker telephone exchange and rural telephone service throughout that part of the territory covered by his public service telephone franchise, after said twenty sections in Arapahoe County are eliminated therefrom, will be the same as it now is; and the materials and supplies which he now has on hand, amounting to several hundred dollars in value and expressly purchased by him for the purpose of maintaining and from time to time extending his telephone lines and rural telephone service to other potential patrons living on said twenty sections of land located in Arapahoe County would be left upon his hands and he will have no present use therefor, and there is no prospect that he will within the near future have any use for such materials and supplies, and therefore his investment in the same and for some time to come will be a dead investment.

"4. The petitioners will by the taking of the lands of said respondent, B. S. Lyttle, and by the taking and acquiring of other lands in said twenty sections located in Arapahoe County in manner and form as hereinabove stated, cause damage to cross-petitioner in the sum of Twenty-five Hundred ($2500.00) Dollars. And for the purpose of determining the amount of said damage, cross-petitioner demands a jury trial herein.

"Wherefore, cross-petitioner prays judgment against the petitioners herein for damages in the sum of Twenty-

five Hundred ($2500.00) Dollars, or such other sum as may be determined by a jury upon a trial and herein to be the amount of his damage in the premises. And cross-petitioner further prays for all costs herein.''

In sustaining the city's objection ''to the filing of the petition in intervention [cross-petition],'' the trial judge said: ''I do not believe the cross-complaint is proper in this case. You are in no way interested in this particular controversy. You may have some damages that you can recover, but not in this suit.''

A twofold question is presented: (1) Does it appear that in and by the condemnation proceeding the cross-petitioner stands to suffer damage, and (2) if so, is the damage recoverable therein? The Constitution (Art. II, §15) says, ''That private property shall not be taken or damaged, for public or private use, without just compensation.'' Identical language is to be found in '35 C. S. A., chapter 61, section 1. Other pertinent statutory provisions follow: ''In all cases where the right to take private property for public or private use without the owner's consent, * * * or which may damage property not actually taken, has been heretofore or shall hereafter be conferred upon any * * * municipal authority, * * * and the compensation to be paid for in respect of the property sought to be appropriated or damaged * * *, cannot be agreed upon * * *, it shall be lawful for the party authorized to take or damage the property so required, * * * to apply to the judge of the court, * * * by filing * * * a petition, setting forth, * * * his or their authority in the premises; the purpose for which said property is sought to be taken or damaged, a description of the property, the names of all persons interested as owners or otherwise, as appearing of record, if known or if not known, stating that fact, and praying such judge to cause the compensation to be paid to the owner to be assessed; * * *.'' '35 C. S. A., c. 61, §2. ''Any person not made a party to such proceeding may become such by filing a cross-petition at any time before the hearing, setting forth that he is an owner or has an interest in

the property sought to be taken or damaged by the petitioner, and stating the character and extent of such interest, and the rights of such person shall thereupon be fully considered and determined. Except such cross-petition there shall be no written pleadings on the part of any party to the proceeding, but at the hearing, provided for in section 6 of this chapter, the court shall hear and dispose of all objections that may be raised touching the legal sufficiency of the petition or cross-petition, or the regularity of the proceedings in any other respect; * * *." '35 C. S. A., c. 61, §12. "The court * * * shall hear proofs and allegations of all parties interested touching the regularity of the proceedings, and shall * * *, appoint a board of commissioners * * *, to ascertain and determine the necessity for taking such lands, franchises or other property, and to appraise and determine damages, and compensation to be allowed the owner and person interested in the real estate or property proposed to be taken or damaged * * *, for the purposes alleged in the petition, * * *. The said commissioners, * * * shall hear the proofs and allegations of the parties, and after viewing the premises, shall, * * *, ascertain and certify the compensation proper to be made to said owner or parties interested, for the lands, real estate or claims to be taken or affected, as well as all damages accruing to the owners or parties interested in consequence of the condemnation of the same, taken or injuriously affected, as aforesaid, * * *." '35 C. S. A., c. 61, §6.

If cross-petitioner "is the sole owner of a valuable public service telephone franchise," and "has constructed, maintains, owns and operates rural telephone lines connecting" with a telephone "exchange," which he also owns, by means whereof he serves rural subscribers, including the owner of the land sought in the condemnation proceeding, as he alleges, which, if favorably adjudged for petitioner, will directly destroy a portion of his lines, and his franchise in part, and "injuriously" affect a greater part of his lines and franchise, as he states, I think

he was entitled to appear in the proceedings by cross-petition, as he attempted, and have his claimed rights "fully considered and determined," as the statute directs. "Under our statute, we think the relief may be granted in the original action upon a proper showing. In no other way can the provision requiring the rights of the interpleader to be fully considered and determined be carried out." *Hutchinson v. McLaughlin,* 15 Colo. 492, 25 Pac. 317. Considering the situation here and the provisions of our Constitution and statutes, quoted above, the language in an Illinois decision is pertinent. "We think the court erred," the opinion states, "in striking the cross-petition * * * from the files. The constitution guarantees as well that private property shall not be damaged, as that it shall not be taken for public use, without compensation, * * * and this guaranty is repeated in the first section of the Eminent Domain act. The second section of that act likewise makes provision for assessing damages on account of property damaged, as well as on account of property taken for public use. Where some property is damaged and other property taken for public use at the same time, in many instances it would seem to be almost indispensible to the ends of justice that the questions should be considered together, and hence there ought to be some way by which, if the petitioner neglect to include in his petition all property damaged as well as all property taken, it could be brought before the court. Obviously, the most convenient way to do this is by cross-petition." *Johnson v. Freeport & M. R. Ry. Co.,* 111 Ill. 413. "Whether the interest of applicant is denominated a franchise or an easement, it is a valuable property right, and its practical destruction would be the taking of property within the constitution. (Lewis on Eminent Domain, secs. 135, 142.) So, also, the interfering with such an interest may be, pro tanto, a taking of property which will entitle the owner to compensation. (Lewis on Eminent Domain, secs. 56, 137.) Private property forbidden by the constitution to be taken or damaged for public use

without just compensation is not limited to the tangible subject matter or corpus of the property, but includes the right of user and enjoyment of it. When such rights are destroyed or taken for public use their owner is entitled to compensation." *City of Belleville v. Turnpike Co.*, 234 Ill. 428, 84 N. E. 1049. A franchise is property and subject to the power of eminent domain. 1 Lewis on Eminent Domain (3d ed.), §213. The franchise being "exclusive does not change its nature, it only affects its value * * * and, like all other property, may be taken upon making just compensation." 2 Lewis Eminent Domain (3d ed.), §439.

It is asserted by petitioner's counsel that "because" cross-petitioner "alleged no interest in the Lyttle farm as such," he "had no right of intervention." I do not construe the statute so narrowly. Evidently on the theory that petitioner was likely to prevail against Lyttle, cross-petitioner filed a cross-petition in which he alleged how, and in relation to what property of his, the condemnation decree will work a damage to him. I cannot think that because petitioner did not allege it was "seeking to damage cross-petitioner's property," but nevertheless was doing so, as said, the statute is not broad enough to admit presentation of the claim of him thus damaged in the condemnation proceeding. See *Mix v. Lafayette B. & M. Ry. Co.*, 67 Ill. 319.

I do not interpret cross-petitioner's pleading as a claim for "injury to his business rather than an injury to property," as stated by petitioner's counsel, a theory adopted in the court opinion. In my view the cross-petitioner was entitled to introduce "proofs" (employing the statutory word) in this proceeding in support of his alleged claims, and have judicial ascertainment in the light of full evidentiary revelation. Its denial leaves him remediless. I decline to have part in closing the doors of the temple to a citizen who only seeks the privilege of a hearing in the tribunal chosen by his adversary.