## KELLETTVILLE GAS CO. v. UNITED STATES.

### Civil Action No. 2520.

District Court, W. D. Pennsylvania.

Sept. 8, 1944.

Breene & Jobson, of Oil City, Pa., for plaintiff.

Charles F. Uhl, U.S. Atty., of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This proceeding is under the Tucker Act, 28 U.S.C.A. § 41(20). It is for the purpose of determining the amount of damages, if any, due the plaintiff from the United States by reason of the alleged taking of plaintiff's property resulting from the authorized elevation by the United States of water in Tionesta Dam. The Court makes the following findings of fact and conclusions of law:

### Findings of Fact.

1. The Kellettville Gas Company was incorporated April 4, 1902, under the Pennsylvania Act of May 29, 1885, P.L. 29 and its supplements, 15 P.S.Pa. § 1981 et seq. Under its charter it was granted the non-exclusive franchise for the term of ninety-nine years to sell natural gas to the public in the village of Kellettville, in Kingsley Township, Forest County, Pennsylvania.

2. The privilege of selling gas was exercised under authority of a certificate of public convenience issued by the Public Utility Commission of Pennsylvania.

3. In the spring of 1938, the company served between eighty and ninety customers in Kellettville.

4. On March 22, 1943, the company applied for, and on July 1, 1943, the Public Utility Commission of Pennsylvania granted, permission to suspend or abandon the service of the company in Kellettville.

5. In 1938, for flood control purposes, the United States commenced construction of a dam in Tionesta Creek, approximately seventeen miles downstream from Kellettville. The dam was completed about the end of 1940. The maximum water level was fixed at 1170 feet above mean sea level.

6. To provide a reservoir for the storage of water behind the dam, the United States acquired, by purchase or condemnation, the fee simple title or flowage easements over lands behind the dam lying below the elevation of 1170 feet above mean sea level.

7. Up to the time of trial the dam had never been filled above an elevation of 1147 feet.

8. All pipes and other properties of the plaintiff have always been situated above the elevation of 1147 feet.

9. The lands acquired by the United States included a large part of Kellettville and the land of many customers of the company.

10. In both the condemnation proceedings and the conveyance by voluntary vendors, the rights of The Kellettville Gas Company were expressly excluded and left unimpaired.

11. The United States elected to discontinue gas service by The Kellettville Gas

Company to the properties which it had acquired. The meters were removed from the houses by the company.

12. The Kellettville Gas Company, from 1938 to 1940, both inclusive, owned gas wells, pipe lines from the wells to Kellettville, pipe lines on its streets and alleys, pipe lines into the properties of its customers, meters, gasometer and gasometer house.

13. The United States did not take the gas wells, pipe lines, meters, franchise or other property of The Kellettville Gas Company. By the acts of the United States in establishing the maximum level for the water in Tionesta Dam at 1170 feet, the acquisition of property in Kellettville below that elevation and the razing of the buildings thereon, The Kellettville Gas Company lost most of its customers. Its property, as a result, was reduced in market value $4800.

### Conclusions of Law.

I. This proceeding is under the Tucker Act, 28 U.S.C.A. § 41(20).

II. The United States did not take the property or franchise of The Kellettville Gas Company.

III. The loss sustained by The Kellettville Gas Company was a business loss.

IV. Judgment should be entered for the United States, with costs.

### Opinion.

The facts appear in the foregoing findings of fact. The question for decision is, did the United States take the property of The Kellettville Gas Company.

The Kellettville Gas Company contends that the Government in fixing an elevation to which water in the Tionesta Dam might be raised, resulted in it losing its customers in Kellettville and a consequent depreciation in value of its property and franchise. The Government contends, that not having taken or injured the property or franchise of The Kellettville Gas Company, it is not required to compensate the company for any loss which it may have sustained by loss of its customers or depreciation in the value of its property and franchise thereby.

■ The United States did not take or injure any of the physical property of The Kellettville Gas Company, nor did it take its franchise; by fixing the maximum elevation to which water might be raised in Tionesta Dam, the acquisition of most of the properties in Kellettville and the razing of the buildings thereon, it caused the com-

pany to lose most of its customers, and as a result of this loss, the market value of the company's property was reduced. Did this constitute a taking of property under the Fifth Amendment?

■ Business losses are not compensable. In United States v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390, the Court held that in a condemnation proceeding the Government must pay only for what it takes and not for opportunities which the owner may lose. In the opinion (319 U.S. at page 282, 63 S.Ct. at page 1056, 87 L.Ed. 1390), it is stated:

"But it is well settled in this Court that, 'Frustration and appropriation are essentially different things.' Omnia [Commercial] Co. v. United States, supra, 261 U.S. [502, at] page 513, 43 S.Ct. [437], 67 L.Ed. 773. Thus in Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, the owner was denied compensation for the destruction of his business which resulted from the taking of his land for a public project even though the business could not be reestablished elsewhere. This Court, after noting that 'settled rules of law' precluded a consideration of 'consequential damages' for losses of a business or its destruction, stated: 'No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land.' 267 U.S. [at] page 345, 45 S.Ct. [at] page 294, 69 L.Ed. 644. That which is not 'private property' within the meaning of the Fifth Amendment likewise may be a thing of value which is destroyed or impaired by the taking of lands by the United States. But like the business destroyed but not 'taken' in the Mitchell case it need not be reflected in the award due the landowner unless Congress so provides."

In Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, an award was made for land taken, but not for a business loss. The Court stated (267 U.S. at page 345, 45 S.Ct. at page 294, 69 L.Ed. 644):

"The settled rules of law however, precluded his considering in that determination consequential damages for losses to their business, or for its destruction. Joslin Manufacturing Co. v. Providence, 262 U.S.

668, 675, 43 S.Ct. 684, 67 L.Ed. 1167. Compare Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211; Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. [328]. No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that the government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land. There can be no recovery under the Tucker Act * * * if the intention to take is lacking. Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162. Moreover, the act did not confer authority to take a business. In the absence of authority, even an intentional taking cannot support an action for compensation under the Tucker Act. United States v. North American [Transportation & Trading] Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935."

In Sanguinetti v. United States, 264 U.S. 146, at page 149, 44 S.Ct. 264, at page 265, 68 L.Ed. 608, wherein increased flooding of land resulted from the construction of a canal and greater injury may have resulted therefrom, the Court stated, inter alia:

"Under these decisions and those hereafter cited, in order to create an enforceable liability against the government, it is at least necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation of and not merely an injury to the property. * * *

"The most that can be said is that there was probably some increased flooding due to the canal and that a greater injury may have resulted than otherwise would have been the case. But this and all other matters aside, the injury was in its nature indirect and consequential, for which no implied obligation on the part of the government can arise."

In Mullen Benevolent Corp. v. United States, 290 U.S. 89, 90, 54 S.Ct. 38, 78 L.Ed. 192, an action was brought in the District Court of Idaho under the Tucker Act to recover a balance due on improvement district bonds. The Court held that this was not a taking, and stated (290 U.S. at page 94, 54 S.Ct. at page 40, 78 L.Ed. 192):

"The petitioner insists that the bonds are property and were in legal effect taken by the respondent. The argument is that the sole source of payment was a reassessment upon the lots in the improvement districts, and as the action of the respondent rendered such procedure vain, the United States as effectually destroyed the chose in action as if it had seized the instruments evidencing the right. But the bonds were not taken. At the date of acquisition by the government the real estate was subject to be assessed in the future for sundry taxes, amongst them taxes in the nature of reassessments for sewers and sidewalks. It is true these could not thereafter be levied on property which had passed to the United States, but this does not mean that the government appropriated the right to assess them in future, nor that it took the benefit which might accrue to bondholders consequent on such future levies. By purchase of the lands the United States at most frustrated action by the city to replenish the assessment fund to which alone the bondholder must look for payment of his bonds. But this was not a taking of the bondholder's property."

See Omnia Commercial Co., Inc., v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773.

In Fix v. City of Tacoma, 171 Wash. 196, 17 P.2d 599, 600, plaintiff had a franchise in the City of Tacoma under which he erected and maintained a water system. The city acquired about fifty houses in an area furnished by the company and demolished them. The Court held that the plaintiff had not suffered any compensable injury, stating, inter alia:

"Now, in considering respondent's loss, it must be borne in mind that he still owns the water plant and mains and has complete dominion over them. The city has not invaded or encroached upon his property in any way. Nor has it in any manner disturbed or interfered with his right, title, or possession. * * *

"The respondent has lost customers and thereby lost revenues because of the decrease in water revenues. But his loss is no different in kind from that sustained by the grocer, the butcher, and baker who have lost the same customers and thereby suffered a loss of revenue. The loss of all is an incident to the lawful exercise of rights of ownership and dominion over its own property by the appellant (city). The respondent's franchise was not exclusive. He might have suffered the same loss had the county granted a similar franchise to another person. His customers in such case might have been induced, by better service

or lower rates, to leave him. Respondent's loss comes within the category of consequential damages which are not contemplated by * * * the Constitution."

In Deepe v. United States et al., 103 Colo. 294, 86 P.2d 242, 243, the owner of a telephone company sought to intervene in condemnation proceedings on the ground that his franchise was being rendered valueless by acquisition of the area served by his company. His right to intervene was denied on the ground that the owner had no interest in the land condemned, the Court stating, inter alia:

"Telephone and other public utilities, like other industries and industrial enterprises, must naturally take their chances on possible changes in the business of a community, changes which may and often do vitally affect the business income, sometimes favorably, sometimes otherwise. Expectations of growth and development in a given territory, like the fear of permanent or temporary recessions or entire disappearance of business, may indeed count as elements of calculation in the planning of one's investment in such territory; but so long as changed conditions result from lawful activities they of themselves do not create vested interests if successful, nor, if adverse, do they supply a ground for charging the loss to others."

The loss of The Kellettville Gas Company was a loss of customers which is a business loss. If a merchant in Kellettville, with an established good will and business, lost all his customers from the same cause, he would not be entitled to recover from the United States the amount of his business loss. The same would be true of the loss sustained by a physician or a lawyer with an established clientele. If a private individual acquired the same property in Kellettville as the United States did and razed the buildings thereon, he would not be required to compensate the company for its loss. The United States is in the same position.

The company contends that it is entitled to compensation under the authority of Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746. These cases are distinguishable from the present case. In each of said cases the United States either took physical property or permanently injured physical property which was held therein to be equivalent to a taking. See Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608, supra.

Let an order for judgment be prepared and submitted in accordance with the foregoing findings of fact, conclusions of law and this opinion.