**SOUTHERN COUNTIES GAS COMPANY OF CALIFORNIA,**

v.

**UNITED STATES.**

No. 483–54.

United States Court of Claims.

Jan. 15, 1958.

Bates Booth, Los Angeles, Cal., for plaintiff. Gertrude Greengard and Irl Davis Brett, Los Angeles, Cal., were on the briefs.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

FAHY, Circuit Judge, sitting by designation.

The case is before us on an agreed statement of facts. Under authority of the Act of August 18, 1941, 55 Stat. 638, 33 U.S.C.A. §§ 701b, 701c, note, 701m, a flood control project, including a dam, has been erected by the Corps of Engineers, United States Army, to control the flood waters of the Rio Hondo and San Gabriel Rivers at the Whittier Narrows, four miles northwest of Whittier, California. In this connection the United States by condemnation proceedings or negotiations acquired fee title or flowage easements affecting a large area of land and improvements, situated above the dam and below the highest elevation to which the waters to be impounded could rise.

Plaintiff is a public service utility corporation supplying gas to domestic, industrial and commercial consumers in Southern California. It maintained and operated transmission lines, distribution lines, and service pipes under the surface of public streets and on private property in the area of the project, servicing 387 residential and 7 industrial, commercial, or agricultural customers. Its facilities were installed and maintained under easements from private owners and rights of way granted by the County of Los Angeles and the City of Montebello. Plaintiff was also possessed of private rights of way and easements for service pipes and connections granted by owners of property serviced.

The United States did not expressly acquire by condemnation or otherwise any of plaintiff's above described properties or rights. The declarations of taking and the condemnation complaint were stated to be subject to existing easements for public utilities and pipelines. The United States did, however, contract with plaintiff for the latter to relocate or abandon in place certain of its facilities and also to transfer to the United States its interest in some of its rights of way and easements.[1]

The United States has prohibited human habitation in the taking area and

---

1. Some areas were acquired by negotiation and purchase. Plaintiff's facilities, rights of way, easements or franchise rights located in and under the dam site and its appurtenant embankments, diversion channels, spillways and outlet works were paid for by the United States at their reasonable value.

has caused to be razed or removed all structures therein except certain industrial structures which will be raised or buttressed against the maximum possible water elevation. Readjustment and closing of streets and alleys have been brought about by the United States.

If the owners did not desire to retain the improvements on land acquired by the United States, an effort was made by the United States to sell the same. Sales were public on terms which required the purchaser to remove the improvements at his expense. In other instances the United States demolished and removed the improvements. Before being removed, sold, or demolished plaintiff was notified and in some instances was instructed or requested to disconnect or remove its facilities from the premises. This the plaintiff did, blocking off the facilities and taking safety precautions. Plaintiff then abandoned in place the facilities so blocked off and disconnected. The cost of removing them would exceed the amount that could be obtained for them as salvage, so that their value represents a total loss to plaintiff.

Plaintiff's claim is for the value of those property rights and facilities in the area which the United States did not acquire by condemnation or otherwise and for which it has not contracted to pay plaintiff, and for its loss as a going concern in the taking area. The facilities are those which the Army Corps of Engineers has determined do not interfere with the project and are not required for continuance of service. Plaintiff's transmission and distribution facilities servicing 387 residential customers have been disconnected, blocked off, and abandoned. Of its facilities servicing seven industrial consumers in the area, four likewise have been disconnected and abandoned.

As we have seen, the properties for which compensation is sought under the Fifth Amendment were not in terms taken by the United States. They were excepted from the declarations of taking and from the condemnation complaint. Use of the properties was brought to an end by the acquisition by the United States of the land of residential and industrial customers of plaintiff, followed by demolition or removal of improvements which had been serviced by plaintiff.

██ We think this was not, within the compensation provisions of the Fifth Amendment, a taking of the properties for which compensation is sought by plaintiff. Plaintiff's loss is due to the project, but in law is a consequential and noncompensable loss. This does not follow, however, merely from the fact that no express taking occurred. United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206.[2] In the circumstances of that case the Supreme Court held that a "flight easement," not taken in terms, was taken in law by the use of the air above claimant's land by aircraft flying low to and from an adjoining military airport. Unquestionably the Whittier Narrows Dam project has also resulted in the loss by plaintiff of the use and value of some of its properties, and this may be attributed in a sense to the use made by the United States of adjoining or appurtenant land. But the connection between the use referred to and the loss to plaintiff is indirect and falls within the principle which denies compensation for loss of business.[3]

As to the franchise, it seems clear that the falling off of customers, though caused by the project, was not a taking; the franchise became less valuable due to the changed situation in the area, but we cannot construe this as a taking of

---

**2.** As in United States v. General Motors Corp., 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311, occurs this statement:

"Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking."

**3.** That business loss is noncompensable, see Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293.

the franchise. So, too, as to the rights of way and easements. Loss of their use and value is also due to the removal of plaintiff's customers, "an unintended incident of the taking of land." Mitchell v. United States, 267 U.S. 341, 345, 45 S.Ct. 293, 294, 69 L.Ed. 644; Kellettville Gas Co. v. United States, D.C., 56 F. Supp. 919, 920. In so holding as to the easements and rights of way we read the agreed statement of facts as not presenting the case of destruction of the availability of easements and rights of way for servicing of premises which remain in the area. If there were land and improvements not taken which could be served by the aid of these easements and rights of way, except for the project, we would have a different question.

As to the underground pipes we note initially that we are not concerned now with value, discussed in United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, relied upon by plaintiff. See, also, United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787. We do not reach value unless the pipes have been taken, which we think is not the case. For the loss here too is due to the taking of the property of others, that is, of plaintiff's customers. A milk distributor, to use a rough analogy, might suffer loss by the turning of the area of a milk route into a public park. But this would not constitute a taking of the route or of the instrumentalities by which it was served. The value of land and improvements might include an element due to their location on the route—a question we do not decide—but the loss to the milk distributor is a business loss.

Though the line between a compensable and a noncompensable loss is sometimes a thin one, see United States v. Welch, supra, we think this case falls on the side of such cases as Omnia Commercial Co. v. United States, 261 U.S. 502, 510, 43 S.Ct. 437, 438, 67 L.Ed. 773, where it is said that "for consequential loss or injury resulting from lawful governmental action the law affords no remedy." There Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.

Ct. 622, 37 L.Ed. 463, is distinguished, as it must be in the present case. See, also, Fix v. City of Tacoma, 171 Wash. 196, 17 P.2d 599.

It follows that plaintiff's petition must be dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.