**UNITED STATES of America,
Plaintiff,**

v.

**40.60 ACRES OF LAND, MORE OR LESS,
IN the COUNTY OF CONTRA COSTA,
STATE OF CALIFORNIA, John O.
Morken, Jr., et al., Defendants.**

**No. C–50344.**

United States District Court,
N. D. California.

Feb. 25, 1971.

James L. Browning, Jr., U. S. Atty.,
for plaintiff.

Hoey & Hoey, Martinez, Cal., for Martine and Celeste Ferrèira.

Dodge, Reyes, Brorby, Kahn & Driscoll, Oakland, Cal., for Kenneth M. & June E. Moss.

Francis W. Collins, Crockett, Cal., for Marcellious Elliott.

Fitzgerald, Abbott & Beardsley, Oakland, Cal., for Mabel N. Tucker.

Harance J. Siino, Pittsburg, Cal., for William A. and Geneve Conn.

Tinning & DeLap, Martinex, Cal., for John A. and Virginia M. Romeo.

Carlson, Collins & Bold, Richmond, Cal., for Contra Costa County Water Dist.

A. A. Cardozo, Modesto, Cal., for (Ray L. & Betty J. Baker) Church (pro per) of the Open Bible), Edna M. Irwin, Hannah C. Dybo.

Condon, Dolgin, Kully & Jameson, Martinez, Cal., for R. J. Barrett and Mary Etta.

Cox & Cummins, Martinez, Cal., for Terrance A. & Mabel E. Bidelman and Nina L. Jeter.

Layne, Brodie & Germino, Palo Alto, Cal., for Earl E. and Patricia J. Sanders and Daniel M. and Nancy L. Colchico.

CONTI, District Judge.

Plaintiff has moved this Court for an order dismissing the complaint as to the defendant Contra Costa Water District, or, in the alternative, for an order for summary judgment in favor of the plaintiff that said defendant is not entitled to any compensation.

A summary of the pertinent facts is as follows: The United States Government brought condemnation proceedings against the City of Port Chicago. The estate taken was the fee simple title subject, among other things, to "easements for public utilities, * * * existing rights of way in favor of the public or third persons for * * * gas and water pipe lines, and canals, laterals, ditches, flumes and siphons."

Prior to the condemnation of Port Chicago, the Contra Costa Water Dis-

trict was granted easement rights and installed pipes, mains and appurtenances for the sole purpose of providing water service to the area. These easements were located principally within the streets, but in some instances were acquired within and over the adjacent lots.

The Contra Costa Water District contends that although the United States Government did not specifically condemn their easement rights, the condemnation of the surrounding land operated to render the pipes and other appurtenances totally useless, and, therefore, was a "taking" within the meaning of the 5th Amendment. The Water District seeks only the fair market value of the pipes, mains and appurtenances, recognizing that loss of business profits is a "consequential" loss and, therefore, not compensable.

The United States, on the other hand, contends that they have not taken the easement rights of the District, but rather have excepted such rights from the condemnation. It is further asserted that any loss which was sustained by the Water District was a consequential loss due to the condemnation of others' properties, rather than a loss sustained from direct action of the United States upon the Water District's property rights.

■ The issue raised is basically whether the government must compensate the owner of easement rights when it does not condemn the easement rights or act directly upon such easements, but its condemnation of the fee operates to render the intended use of the easement completely useless. The Court feels that this question must be answered in the negative.

The Water District relies primarily on two cases in support of its position: United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206; United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311.

In Causby, the respondents owned property which had a dwelling house located on it, but was used primarily for the raising of chickens. Various aircraft of the United States flew so low over the respondents' land that the noise made it impossible to raise chickens or for the respondents to sleep at night.

In the holding that there was a "taking" within the meaning of the 5th Amendment, the court stated:

"If, by reason of the frequency and altitude of the flights, respondents could not use this land for any purpose, their loss would be complete. It would be as complete as if the U.S. had entered upon the surface of the land and taken exclusive possession of it.

We agree that in those circumstances there would be a taking. * * * It would be a definite exercise of complete dominion and control over the surface of the land."

In General Motors Corp., the respondent had a long term lease on a warehouse building in Chicago. The U.S., through condemnation proceedings, took possession of the respondent's premises, but only for a period of years short of the termination date of the lease.

The question that was presented was whether the U.S. need only compensate the tenant for the rental value of the premises, or whether the "taking" also extended to the tenant's moving expenses.

The court held that "the value of such occupancy is to be ascertained, not by treating what is taken as an empty warehouse to be leased for a long term, but what would be the market rental value of such a building on a lease by the long-term tenant to the temporary occupier." This value was said to include moving expenses of the tenant.

■ The Water District contends that these two cases stand for the proposition that compensation under the 5th Amendment does not depend on the express physical appropriation of the property by the government. The owner need only be deprived of the beneficial use of his property. With this broad proposition the court agrees, but these

cases are distinguishable from the instant factual situation.

In both *Causby* and *General Motors Corp.* there was a direct exercise of dominion and control by the government over the property of the person seeking compensation. In *Causby*, which is probably the strongest case in support of the Water District's position, there was no physical appropriation of the land by the government, but there was a *direct* interference with such land. The government flew its planes directly over the land in such a way that it was rendered useless to the owner. The exercise of dominion and control over the owner's land was as definite as if the government had physically appropriated the land.

In the instant case, the situation is quite different. There was no direct interference by the government with the Water District's pipes, mains and appurtenances which rendered them useless. Rather, the loss occurred from the condemnation of the property *of others*. If the military were to move out of Port Chicago tomorrow, the easement rights of the Water District would be as useful as ever. They have only been rendered valueless by the moving away of the Water District's customers—which was an indirect effect of the government's exercise of dominion and control over the fee, not the Water District's pipes, mains and appurtenances.

The only case directly in point is Southern Counties Gas Co. of Cal. v. United States, 157 F.Supp. 934, 141 Ct. Cl. 28. In that case a flood control project had been erected by the Corps of Engineers of the U. S. Army. In connection with this project, the U. S. acquired by condemnation fee title or flowage easements affecting a large area of land. The U. S. prohibited human habitation in the taking area. The plaintiff was a public utility corporation which maintained service pipes under the surface of public streets and private land in the area of the project. The Court held that the plaintiff was not entitled to compensation for his pipes. The Court stated:

"We do not reach value unless the pipes have been taken, which we think is not the case. For loss here too is due to the taking of the property of others, that is, of plaintiff's customers."

In the present case, there has not been a "taking" of the Water District's pipes, mains and appurtenances within the meaning of the 5th Amendment. Therefore, the complaint as to Contra Costa Water District is dismissed.